996 F.2d 136
 16 Employee Benefits Cas. 2511, Pens. Plan Guide P 23880C
John C. LEAHY, Plaintiff-Appellant,
v.
TRANS JONES, INC.; Dean Duffey; Thomas Hummer; William
Ludwick; Fred Gesell; Bill Malone; Henry
Whitaker and William Covert, Defendants-Appellees.
 No. 92-3641.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 25, 1993.
Decided June 18, 1993.
 
 Christopher E. Hohenberger, Ritter, Robinson, McCready & James, Toledo, OH (argued and briefed), for plaintiff-appellant.
 Kathleen McCree Lewis (briefed), Dykema & Gossett, Detroit, MI, Mary E. Royce (argued), Linda Paullin-Hebden, Dykema, Gossett, Spencer, Goodnow & Trigg, Bloomfield Hills, MI, William H. Heywood, III, Shumaker, Loop & Kendrick, Toledo, OH, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, MI, for defendants-appellees.
 Before: KENNEDY and MILBURN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 KRUPANSKY, Senior Circuit Judge.
 
 
 1
 Plaintiff-Appellant, John C. Leahy has appealed the district court's grant of summary judgment in favor of defendants-appellees, Trans Jones, Inc. (Trans Jones), Dean Duffey, Thomas Hummer, William Ludwick, Fred Gesell, Bill Malone, Henry Whitaker and William Covert. In this proceeding under the Employee Retirement Income Security Act of 1974 (ERISA), Leahy charged that the defendant company, the members of the Trans Jones Employee Stock Ownership Plan Committee (the Committee) and the Plan Trustees wrongfully denied him a lump sum distribution of his retirement benefits upon early retirement. The district court granted summary judgment to the defendants on May 22, 1992, and Leahy filed a timely notice of appeal. Thereafter, on December 30, 1992, Trans Jones filed a Chapter 11 bankruptcy petition in the United States District Court for the Eastern District of Michigan. Trans Jones then filed a notice of the bankruptcy petition with this court, requesting the statutory stay required by 11 U.S.C. § 362. This court granted the stay and dismissed Trans Jones as a defendant in this appeal, permitting the appeal to proceed only as to the named individual defendants.
 
 
 2
 John Leahy had been an employee of Trans Jones from January 1, 1976, through May 22, 1987, when he retired at age 57. Following his termination of employment, Leahy submitted a written request for immediate distribution of his Trans Jones Employee Stock Ownership Plan (Plan) account. The Plan had been instituted by Jones Transfer Company[1] on January 1, 1976, for all salaried and hourly employees who were not represented by a labor union under a collective bargaining agreement. All employees of Jones Transfer who were above the age of 24 and a half years, had completed at least 1,000 hours of service in a calendar year, and had been employed for at least three years were participants in the Plan. Leahy had been a participant in the Plan since its inception.
 
 
 3
 The Plan was administered by the Trans Jones Employee Stock Ownership Plan Committee whose members were appointed by the Board of Directors of Trans Jones. At least three of the Committee members were required to be employees of the company. At the time Leahy filed his complaint in federal district court, defendants Dean Duffey, Thomas Hummer, William Ludwick and William Covert were members of the Committee. The Plan was funded entirely by employer contributions and all Plan accounts were 100% vested. The assets of the Plan were held in trust under a trust agreement between Trans Jones and the designated trustees, William Covert, Bill Malone, Henry Whitaker and Fred Gesell.
 
 
 4
 Prior to Leahy's retirement, all employees who had terminated their employment with Trans Jones prior to their 65th birthdays had received an immediate lump sum distribution of their Plan benefits upon request. However, by letter dated June 1, 1987, the Committee notified all Plan participants that the practice of granting immediate settlements resulting from early retirement would be discontinued. According to the letter, the practice of immediate distribution defeated the purposes of the plan which were to promote company loyalty and provide a supplemental retirement income. The newly inaugurated policy became effective on January 1, 1987, and subsequent to that date, the Committee has consistently denied distributions before the normal retirement age.
 
 
 5
 Leahy terminated his employment on May 22, 1987, and in early June, 1987, he contacted Diane Becker, Benefits Manager for Trans Jones, to inquire about immediate distribution of the company stock he had in the Plan. Leahy was instructed to submit a written request to Covert, the chairperson of the Plan's administrative committee. In response to his request to Covert, Leahy was notified by a letter from Diane Becker dated June 30, 1987, that his request could not be considered until a financial evaluation of the 1987 year-end business operations had been concluded. Becker expected this evaluation to be completed sometime in May or June of 1988. Accompanying Becker's letter was a copy of the June 1, 1987, letter from Covert detailing the change in Plan policy concerning early retirement lump sum payments. Becker specifically advised Leahy that lump sum payments could be withheld until he reached age 65. On August 27, 1990, Leahy was notified that his request had been denied. Leahy then filed the action that is the subject of this appeal.
 
 
 6
 This appeal is from the district court's grant of summary judgment. Appeals from grants of summary judgment are reviewed under a de novo standard. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). The court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Massey v. Exxon Corp., 942 F.2d 340, 342 (6th Cir.1991). The evidence must be viewed in a light most favorable to the nonmoving party, but the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). There must be a genuine issue of material fact. Middleton v. Reynolds Metals, 963 F.2d 881, 882 (6th Cir.1992). A fact is material if it will "affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after being allotted sufficient time for discovery, the opposing party is unable to demonstrate that he or she can produce the evidence required by the criteria of Liberty Lobby, summary judgment is appropriate." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989) (adopting the "New Era" of summary judgment as defined by Liberty Lobby, 477 U.S. at 252, 106 S.Ct. at 2512; Celotext Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
 
 
 7
 As his first assignment of error, Leahy charged that the district court erred in awarding summary judgment because it improperly weighed the evidence in defendants' favor in determining that the change in policy had been effected by the Plan Committee rather than the new management of Trans Jones. The Plan provision pertaining to early retirement permits only the Committee to change the terms of payment.
 
 
 8
 Upon the termination of a Participant's employment prior to his Normal Retirement date his Account shall be fully vested and Nonforfeitable, and the Trustee at the direction of the Committee shall as promptly as administratively feasible arrange to make benefits available to the Participant in the same manner and form as at normal retirement, except that if the Committee so directs, the Participant's Account shall not be paid, or commence to be paid, until the Participant's sixty-fifth (65th) birthday, or until such earlier date as the Committee with the Participant's consent shall select at which time the same steps shall be taken as in the case of normal retirement.
 
 
 9
 J.App. at 90 (emphasis added). Leahy argued that no Committee was in existence at the time of the policy change, and that the change had been improperly made by Gary White, the owner of Trans Jones. In support of this position, Leahy offered his own affidavit wherein he stated that Diane Becker, Benefits Manager for Trans Jones, advised him that "no Plan Committee [existed] due to the recent change in ownership." J.App. at 159. Additionally, Leahy relied upon the deposition testimony of William Ludwick who stated that in his opinion no Committee existed in 1987 or 1988, J.App. at 264-65, and that the June 1, 1987, change in policy had been unilaterally originated by Gary White and not the Plan Committee. J.App. at 292. In opposition, Trans Jones presented the affidavit of Committee member Thomas Hummer who averred that the Committee had been in existence at the time and that it had adopted the policy change. Moreover, the letter of June 1, 1987, describing the policy change was itself signed by Covert, the chairperson of the Plan Committee on behalf of the Committee, and invoked the section of the Plan authorizing the Committee to implement the policy change.
 
 
 10
 Although evidence must be weighed in favor of the non-moving party in judging a motion for summary judgment, the non-moving party must nevertheless prove the existence of a genuine issue of material fact. A mere scintilla of evidence will not suffice. Liberty Lobby, 477 U.S. at 252, 106 S.Ct. at 2512. Leahy failed to satisfy his burden in this action. His affidavit is unsupported by any other evidence except for the deposition testimony of William Ludwick. Ludwick, however, also testified that his statement was pure supposition.
 
 
 11
 That's why I say, I just surmised in my mind that with a change of ownership of the company that the committee was abandoned and no new committee was assigned. True or false, that's my own impression and not backed up by anything.
 
 
 12
 J.App. at 274. Trans Jones on the other hand presented the letter that was signed by the chairperson of the Plan Committee and the affidavit of a committee member indicating that the Plan Committee was in existence at the time of the policy change. Because Leahy failed to present any competent evidence to support his conclusion concerning the non-existence of the Plan Committee, the district court did not err in determining that there was no question of fact as to whether a Committee existed at the time of the policy change in lump sum disbursements.
 
 
 13
 Leahy next charged that the denial of his benefits was based upon an impermissible amendment to the Plan. The standard of review for a denial of benefits under ERISA is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). However, when the benefit plan gives the administrator discretionary authority to construe the terms of that plan, the standard of review is whether the denial of benefits was arbitrary or capricious. Callahan v. Rouge Steel Co., 941 F.2d 456 (6th Cir.1991). An examination of the language of the Plan quoted above discloses that the Committee had the discretion to decide whether or not to distribute lump sum payments upon early retirement. See supra at 139. The Plan provided for an early lump sum disbursement but also delegated discretion to the Committee to withhold payment under the plan until the claimant reached 65 years of age. Thus, the change in policy outlined by the June 1, 1987, letter must be reviewed on an arbitrary and capricious standard.
 
 
 14
 The June 1, letter outlining the change in policy concerning early retirement offered the Committee's reasons for the change.
 
 
 15
 Our E.S.O.T. Plan was initiated in 1976 to instill in our employees a pride of ownership in the company and to supplement the employee's retirement income.
 
 
 16
 In the past, the E.S.O.T. Committee has granted all participants who terminated their employment immediate settlement of their E.S.O.T. account.
 
 
 17
 The new management team believes that this practice defeats the purpose of the E.S.O.T. Program. Accordingly, effective January 1, 1987, participants who leave the company prior to their normal retirement date (their 65th birthday) will be required to wait until their 65th birthday before receiving their benefit. This option is available to the committee under Article VI, Paragraph D of the E.S.O.T. Plan Document.
 
 
 18
 J.App. at 44. The letter specifies that the change in policy was intended to promote two Plan objectives: employee pride in the company and a supplement to retirement income. The Committee's conclusion that early distributions would detract from those objectives was not arbitrary or capricious.
 
 
 19
 The change in policy did not violate any fiduciary duty towards the beneficiaries. When a plan's assets consist entirely of the company's stock as in the instant action, the interests of the employer and the participant are closely aligned. If the Committee's decision was beneficial to Trans Jones, the same benefit would inure to the Plan participants through increased profits and an increased value in the company's stock. Morse v. Stanley, 732 F.2d 1139, 1146 (2d Cir.1984) (No violation of trustee's fiduciary duties when actions taken in the best interests of the plan participants also benefit the corporation). Because the Committee's decision to change the early retirement policy was not arbitrary or capricious, the second assignment of error fails.
 
 
 20
 As his final assignment of error, Leahy charged that the district court improperly granted summary judgment when it neglected to address his argument that the defendants had failed to employ three independent appraisers to perform an annual evaluation of the stock as required by the terms of the Plan. This charge of error is without merit. Leahy has failed to produce any factual allegations sufficient to create a genuine issue of material fact that the defendants' failure to have conducted an annual appraisal of the company's stock caused him damage. Without pleading specific factual assertions, his complaint simply alleges in a conclusory manner that the defendants breached the sections of the Plan concerning valuation of the stock. Moreover, even assuming that the defendants had not employed three independent appraisers as required by the Plan provisions, Leahy has failed to assert a factual basis for damages that may have accrued from this departure. Under the terms of the newly imposed policy, Leahy was not entitled to receive any benefits until he reached 65 years of age. Consequently, a stock appraisal at the time of his early retirement age of 57 years or before his normal retirement age of 65 years would have been of questionable value. In order to survive a motion for summary judgment, the non-moving party must present a factual dispute that will "affect the outcome of the suit." Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510. The factual question of whether three independent appraisers were employed would not affect the outcome of this action and therefore Leahy's final assignment of error must also fail.
 
 
 21
 For the reasons stated, the district court's grant of summary judgment is hereby AFFIRMED.
 
 
 
 [1]
 Sometime around August 30, 1985, Jones Transfer Company was reorganized and became Trans Jones, Inc. Subsequently, on December 31, 1985, Trans Jones was sold to Gary White and the former owners, Robert Duffey and Ralph Manausso, terminated their relationship with the company