91 F.3d 144
 Pens. Plan Guide P 23926Y
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ralph R. LEWIS, Jr., Plaintiff-Appellee,
v.
PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Defendant-Appellant.
 No. 95-5635.
 United States Court of Appeals, Sixth Circuit.
 July 9, 1996.
 
 Before: RYAN and NORRIS, Circuit Judges; DOWD, District Judge.*
 OPINION
 PER CURIAM.
 
 
 1
 Defendant Plumbers and Pipefitters National Pension Fund appeals the decision of the district court granting plaintiff Ralph R. Lewis, Jr., summary judgment in this action seeking an increased pension benefit under Section 502 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). For the following reasons, we reverse.
 
 I.
 
 2
 Plaintiff is a participant in the Plumbers and Pipefitters National Pension Fund ("NPF"). The NPF is an ERISA-regulated insurance fund administered by a Board of Trustees in accordance with the terms of a written plan of benefits ("the Plan"). The Plan vests the Trustees with "the exclusive right and discretionary authority to construe the terms of the Plan, to resolve any ambiguities, and to determine any questions which may arise with the Plan's application or administration, including but not limited to determination of eligibility for benefits."
 
 
 3
 From 1951 to 1970, plaintiff worked as a journeyman pipefitter until a work-related injury forced him to leave his employment. Plaintiff's former employer was not a contributor to the NPF at the time plaintiff left his employment. However, the former employer subsequently became an NPF contributor in 1973. In 1987, plaintiff recovered from his disability and began to work again as a pipefitter with a new employer that was an NPF contributor. Plaintiff retired from this new employer in 1992.
 
 
 4
 Upon retirement, plaintiff applied for pension benefits from the NPF. The NPF awarded him a total pension credit of 21.8 years. This figure was computed by adding the "Future Service Credit" plaintiff accumulated under § 5.04 of the Plan[1] to the "Past Service Credit" plaintiff accumulated under § 5.02(a) of the Plan.[2] The NPF credited plaintiff with 5.3 years of Future Service Credit for the years he worked for a contributing employer immediately prior to his retirement and 16.5 years of Past Service Credit for the years he worked for the employer that subsequently became a contributing employer. The Trustees credited plaintiff with Past Service Credit in spite of the "Break-in-Service" rules at § 506(a),[3] which appear to warrant cancellation of this credit since he incurred a "Permanent Break in Service" as defined under § 506(d)[4] by not working between 1970 and 1987. Plaintiff avoided the effects of a break in service, however, because his break was necessitated by disability, and the Trustees acted under § 5.06(e)(ii)(A) to waive the break in service provision.[5]
 
 
 5
 The NPF determined that plaintiff's total pension credit qualified him for a monthly pension of approximately $263.00. The NPF arrived at this benefit figure after concluding that plaintiff incurred a "Separation from Covered Employment" as defined in § 4.20.[6] This conclusion was significant because under § 4.20, if a participant incurs a separation, his monthly pension benefit entitlement essentially consists of two payments. Both payments are computed by multiplying accrued service credits by a contribution rate. One payment is computed by multiplying Past Service Credit by the contribution rate in effect at the time participant incurred his separation, and the other payment is computed by multiplying Future Service Credit by the contribution rate in effect when the participant retired. In plaintiff's case, the contribution rate was much lower when plaintiff incurred his separation than when plaintiff retired in 1992. Hence, plaintiff's Past Service Credit entitled him to a lower benefit payment than he would have received had this credit earned the higher 1992 contribution rate that his Future Service Credit earned. In real terms, if plaintiff had not incurred a separation he would have been entitled to some $600 more in monthly benefit payments.
 
 
 6
 Plaintiff did not dispute that he incurred a Separation from Covered Employment; rather, he appealed to the Trustees to waive application of the separation provision on account of plaintiff's intervening disability. The Trustees denied plaintiff's appeal because they construed the terms of the Plan as not authorizing waiver of the separation provision. Plaintiff then brought suit under ERISA. On cross-motions for summary judgment, the district court reviewed the terms of the plan de novo, rejected the Trustees' interpretation of the Plan, and granted plaintiff summary judgment.
 
 II.
 
 7
 Defendant argues that the district court erred in denying its motion for summary judgment and granting plaintiff's motion. This court reviews a district court's grant of summary judgment de novo. Lake v. Metropolitan Life Ins. Co. 73 F.3d 1372, 1376 (6th Cir.1996). Summary judgment is appropriate where "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and pleadings in the light most favorable to the nonmoving parties. Lake, 73 F.3d at 1376.
 
 
 8
 Defendant contends that the Trustees correctly construed the terms of the Plan as not authorizing a waiver of the Separation from Covered Employment provision even though the cause of plaintiff's separation was his intervening disability. This is a matter of contract interpretation. Generally, the standard of review for a denial of benefits under ERISA is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, when the plan gives the administrator discretionary authority to construe the terms of the plan, the standard of review is whether the denial of benefits was arbitrary and capricious. Leahy v. Trans Jones, Inc., 996 F.2d 136, 139-40 (6th Cir.1993). Because the NPF plan expressly gives the Trustees "the exclusive right and discretionary authority to construe the terms of the plan ... including but not limited to determination of eligibility for benefits," we must apply the arbitrary and capricious standard. Under this standard of review, we are obligated to affirm the Trustees' interpretation of the Plan if that interpretation is reasonable, even if the Trustees' interpretation will lead to a harsh result. Johnson v. Eaton Corp., 970 F.2d 1569, 1574 (6th Cir.1992); Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693-94 (6th Cir.1989), cert. denied, 495 U.S. 905 (1990).
 
 
 9
 We now turn to the question of whether the Trustees reasonably interpreted the Plan as not permitting waiver of the Separation from Covered Employment provision on account of plaintiff's intervening disability. The separation provision at § 4.20 provides that, if a participant fails to work a specified number of hours over five consecutive years, he incurs a separation. Those service credits earned prior to separation accrue benefits based upon the contribution rate in effect at the time of the separation. If the participant subsequently returns to work "after five consecutive One-Year Breaks in Service," those service credits earned after separation accrue benefits based upon the contribution rate in effect at the time of next separation, or in this case, plaintiff's retirement. As the district court noted, a purpose of the separation provision is to protect the Plan from individuals who leave the profession to work in a different field and subsequently return to the profession to retire and upgrade their past service credits to the usually higher, current contribution rate.
 
 
 10
 It is not clear, however, why the separation provision refers to "Breaks in Service" when setting the conditions under which a participant may return to work and begin accruing benefits under the current contribution rate. The district court interpreted the reference to mean that a participant can incur a separation only if he has also incurred a break in service. Thus, because the Trustees waived plaintiff's break in service due to his disability, the district court decided that plaintiff did not incur a separation, and all his service credits should have accrued benefits based upon the contribution rate in effect upon his retirement. The district court supported its interpretation by noting that it was illogical for the Plan not to permit waiver of separation on account of disability while permitting waiver of breaks in service on account of disability.
 
 
 11
 Arguably, the district court's interpretation is a reasonable reading of the Plan. Defendant offers another reasonable reading of the Plan, however. It interprets the Plan to mean that the instant a participant satisfies the definition of separation by failing to work the specified number of hours (as did plaintiff here), service credits earned prior to separation simply accrue benefits based upon the contribution rate in effect at the time of separation while service credits earned after separation accrue benefits based upon the contribution rate in effect upon retirement. While defendant does not address the significance of the separation provision's reference to breaks in service, its interpretation is nonetheless consistent with the Plan's interest in protecting itself from participants returning to the Plan after a several year hiatus.
 
 
 12
 Also, the separation provision's reference to "five consecutive One-Year Breaks in Service" is unrelated to plaintiff's separation and makes sense when one considers the operation of the Break in Service rules at § 5.06. Unless waived by the Trustees, these rules provide that all prior years of service are canceled when a participant incurs a break. However, under § 5.06(b)(vii),[7] a break in service can be repaired. If repaired, the participant retains credit for the canceled years of service. The Plan must then set the contribution rate to apply to the "repaired" credit. It could apply the contribution rate in effect when the participant retires, or it could apply the contribution rate in effect when the participant incurred the break. As regards five consecutive one-year breaks in service, the Plan has determined under § 4.20 to apply the contribution rate in effect when the participant incurred the break. Therefore, not only does § 4.20 define the meaning and effect of separation, but it also serves to set forth the contribution rate to apply when a participant incurs five consecutive one-year breaks in service. Interpreted in this light, whether plaintiff incurred a separation is unrelated to whether plaintiff incurred a break in service.
 
 
 13
 We also note that § 5.06(g) provides several exceptions to the Break in Service rules. Exception (iv) provides that a participant's employment with a particular plumbing and pipefitting union can operate to waive a one-year break in service. The exception states that "[s]uch employment shall also count to avoid any separations under § 4.20." This language indicates that a participant may incur both a break and a separation, and unless expressly provided otherwise in the Plan, waiver of the break in service rules has no effect upon whether a participant has incurred a separation under § 4.20. As the Plan contains no language that a waiver on account of disability "shall also count to avoid any separations under § 4.20," the Trustees were on firm ground when they interpreted the plan as not permitting waiver of plaintiff's separation despite waiver of his break in service.
 
 
 14
 In sum, defendant's interpretation of the NPF plan is a reasonable interpretation. We therefore cannot say that the Trustees' application of the Separation of Covered Employment provision to plaintiff's pension benefit determination was arbitrary and capricious.
 
 III.
 
 15
 Accordingly, the decision of the district court is reversed and this cause is remanded to the district court for entry of judgment in favor of defendant.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Section 5.04 provides:
 Future Service Credit
 For the period commencing on his Contribution Date, a Participant shall receive one full year of Future Service Credit during each Calendar Year in which he completes 1,500 or more Hours of Work in Covered Employment.
 
 
 [2]
 Section 5.02(a) provides:
 Past Service Credit
 In order to qualify for Past Service Credit for years of employment prior to the Participant's Contribution Date, a Participant must have worked at least 2,250 hours during the period consisting of the five Calendar Years immediately prior to the year of his Contribution Date in the jurisdiction of any local union affiliated with the United Association in work covered by agreements of such local unions.
 One exception to this rule shall be granted a Participant who proves on the basis of medical evidence satisfactory to the Trustees that his failure to meet the work requirements of the preceding paragraph was due to one or more periods of total disability....
 
 
 [3]
 Section 506(a) provides:
 General
 If a person has a Break in Service before he has attained Vested Status, it has the effect of canceling his standing under this Plan; that is, his participation, his previously credited Years of Vesting Service, and his previous Pension Credits. However, a Break may be temporary, subject to repair by a sufficient amount of subsequent service. A longer Break may be permanent.
 
 
 [4]
 Section 506(d) provides:
 Permanent Break in Service After 1975 and Before 1985
 A person who has less than four Years of Vesting Service shall incur a Permanent Break in Service prior to January 1, 1985 if he has at least three consecutive One-Year Breaks in Service after his Contribution Date, including at least one after 1975. A person who has four or more Years of Vesting Service shall incur a Permanent Break in Service when his number of consecutive One-Year Breaks in Service equals or exceeds the number of Years of Vesting Service with which he has been credited.
 Section 5.06(b)(i) provides:
 A person has a One-Year Break in Service in any calendar year after 1975 or after his Contribution Date, if later, in which he fails to complete 300 Hours of Work.
 Plaintiff's Contribution Date was 1973, the year his previous employee became an NPF contributor.
 
 
 [5]
 Section 5.06(e)(ii)(A) provides:
 An Employee can be allowed a grace period if his failure to earn Pension Credit or Vesting Service is due solely to his total disability as established to the satisfaction of the Trustees....
 
 
 [6]
 Section 4.20 provides:
 Amount of Benefits after Separation from Covered Employment.
 Notwithstanding the provisions of Section 4.03, the accrued benefit to which a Participant is entitled shall be fixed under the terms of the Plan as in effect at the time the Participant separates from Covered Employment and the Contribution Rate at which he worked prior to such separation. A Participant shall be deemed to have separated from Covered Employment on the last day of work which is followed by five consecutive calendar years in which the employee fails to earn at least 2 tenths of a year of Future Service Credit. If a Participant returns to Covered Employment after five consecutive One-Year Breaks in Service, he may accrue additional benefits under the terms of the Plan then in effect and the Contribution Rates at which he subsequently works. Such additional accrued benefits shall be added to his previously accrued benefits to determine his total accrued benefits.
 
 
 [7]
 Section 5.06(b)(vii) provides:
 A One-Year Break in Service is repairable, in the sense that its effects are eliminated if, before incurring a Permanent Break in Service, the Employee subsequently earns a Year of Vesting Service (870 hours).