*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0353P (6th Cir.)
File Name: 03a0353p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

KATHY STUPAK-THRALL, et al.,

    *Plaintiffs-Appellants,*

*v.*

DANIEL GLICKMAN, et al.,
    *Defendants-Appellees.*

No. 99-1666

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 98-00113—Robert Holmes Bell, Chief District Judge.

Argued: August 10, 2001

Decided and Filed: October 3, 2003

Before: KEITH, BATCHELDER, and MOORE, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Steven J. Lechner, MOUNTAIN STATES LEGAL FOUNDATION, Lakewood, Colorado, for Appellants. Todd S. Kim, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for

Appellees. **ON BRIEF:** William Perry Pendley, MOUNTAIN STATES LEGAL FOUNDATION, Lakewood, Colorado, for Appellants. Mark R. Haag, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Elizabeth H. Schmiesing, William L. Underwood, FAEGRE & BENSON, Minneapolis, Minnesota, for Amici Curiae.

———————

## OPINION

———————

ALICE M. BATCHELDER, Circuit Judge. Plaintiffs-Appellants, seeking a declaration that Crooked Lake is not part of the Sylvania Wilderness area and therefore is not within the regulatory authority of the United States Forest Service, appeal the district court's decision dismissing as time-barred their claim against the United States. Because we find that the plaintiffs' claims are untimely and that the government did not waive its right to raise a statute of limitations defense, we will **AFFIRM** the district court's grant of summary judgment.

## I.

The plaintiffs are property owners holding certain riparian rights to the use of Crooked Lake, located in the Ottawa National Forest in Michigan's Upper Peninsula. In 1987, Congress enacted the Michigan Wilderness Act ("MWA"), 101 Stat. 1274, which created the Sylvania Wilderness Area from portions of the Ottawa National Forest. As a federal Wilderness Area, the region fell under the rule-making authority of the United States Forest Service. The Forest Service began the process of amending the Land Resource Management Plan ("LRMP") for the Ottawa National Forest to include regulation of the Sylvania area. The process allowed for public meeting and public comment as provided by 16 U.S.C. § 1604 and 36 C.F.R. § 219. There is no dispute

that the Forest Service followed the proper administrative procedure in adopting the amendments to the LRMP.

On April 20, 1992, the Forest Service announced "Amendment No. 1" to the LRMP, which dramatically restricted certain activities on the portion of the lake lying within the Wilderness Area. The amendment prohibited the use of sailboats, houseboats and disposable food and beverage containers on the wilderness portion of the Lake. The plaintiffs filed suit in 1993 challenging Amendment No. 1. *See Stupak-Thrall v. United States* (*"Stupak-Thrall I"*), 843 F.Supp. 327 (W.D. Mich. 1994), *aff'd* 70 F.3d 881 (6th Cir. 1995), *vacated*, 81 F.3d 651 (6th Cir.), *aff'd by equally divided en banc court*, 89 F.3d 1269 (6th Cir. 1996). The district court ruled against the plaintiffs on the issues of whether creation of the Wilderness Area was within the bounds of congressional power, and whether the government had effected a taking by issuing rules governing use of the lake. The plaintiffs did not raise any contention in that case that the lake was not part of the Wilderness Area. The district court's decision was affirmed by an equally divided en banc court.

In 1995, again dramatically altering the riparian[1] owners' use of Crooked Lake, the Forest Service adopted "Amendment No. 5," which prohibited the use of all gasoline-powered motors on the lake, limited electric motors to four horsepower, and imposed a "no-wake" speed limit and other limitations. The plaintiffs again filed suit challenging the regulation of Crooked Lake by the Forest Service. *See Stupak-Thrall v. Glickman,* (*"Stupak-Thrall II"*), 988 F. Supp. 1055 (W.D. Mich. 1997), appeal pending. As was true in the first case, the plaintiffs raised no contention in this second

---

[1] "[T]he nature of riparian ownership is such that each owner shares rights to the whole lake, so long as his or her land touches the lake waters." *Stupak-Thrall I*, 70 F.3d at 883 (citing *Rice v. Naimish*, 8 Mich. App. 698, 155 N.W.2d 370, 373 (1967)).

case that Crooked Lake was not properly part of the Sylvania Wilderness Area. Although the district court in *Stupak-Thrall II* held that the Amendment No. 5 is invalid as applied to the plaintiffs, the court's decision is premised on the proposition that "[n]inety-five percent of Crooked Lake lies within the boundaries of the Sylvania Wilderness." *Id.* at 1058. The appeal in *Stupak-Thrall II* is being held in abeyance pending resolution of this appeal.

In the instant case, the plaintiffs claim for the first time that Crooked Lake is not part of the Wilderness Area, and is therefore beyond the scope of federal regulation. They seek a permanent injunction requiring the Forest Service to exclude the lake from its official map of the area. After hearing argument on cross-motions for summary judgment, the district court held that the riparian owners' claims are barred by the statute of limitations. On appeal, in an apparent attempt to avoid a problem with the statute of limitations, the plaintiffs not only argue that Crooked Lake should not be part of the wilderness, they focused their oral argument on the Forest Service's failure to complete the official map and legal description of the Sylvania Wilderness Area as required by Section 4 of the MWA. Because the map is not complete, the plaintiffs argue, their cause of action cannot be time-barred. Under the Administrative Procedure Act ("APA"), plaintiffs seek to compel the Forest Service to complete the map and legal description of the Sylvania Wilderness Area, to exclude Crooked Lake from the Wilderness Area, and to finally determine the extent of the Forest Service's regulatory authority over Crooked Lake.

## II.

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Marketing Co.,* 973 F.2d 1296, 1303 (6th Cir. 1992).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the outset, we must clearly articulate what we believe to be the essence of the plaintiffs' claims in this case. From the complaint filed with the district court and the briefs before this court, it is clear that the plaintiffs seek redress for a perceived injury arising from the inclusion of Crooked Lake within the Sylvania Wilderness Area. However, the plaintiffs raise in their briefs, and stressed during oral argument, that their injury also grows from the Forest Service's failure to complete the official map and legal description, invoking 5 U.S.C. § 706(1) of the APA.[2]

---

[2] "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall —
(1) compel agency action unlawfully withheld or unreasonably delayed."
5 U.S.C. § 706(1).

We find this latter contention to be a disingenuous argument made by the plaintiffs in an attempt to circumvent the district court's finding that their claims are time-barred. The complaint does not seek to compel any agency action, let alone the completion of the map and the legal description. Before the district court, the plaintiffs sought injunctive relief against the Forest Service to prohibit the Forest Service from acting, relief that is wholly outside the scope of 5 U.S.C. § 706(1) and entirely contrary to their intention—as presented during oral argument— to compel the Forest Service to act. Moreover, if the plaintiffs were truly claiming that their cause of action arises from the Forest Service's failure to act, they would lack standing to bring this claim. Failure to establish standing is a jurisdictional defect. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). To satisfy the requirements of Article III standing, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). It is not the government's failure to complete the mapping of the Sylvania Wilderness Area that causes the injury of which plaintiffs complain, it is the inclusion of Crooked Lake in the wilderness area. Plaintiffs' dispute with the government is that the Lake cannot lawfully be included in the wilderness, and even if we were to order the Forest Service to complete the mapping process, our order would not redress the plaintiffs' injury. Accordingly, we will decide this case by addressing the plaintiffs' claim that Crooked Lake should not be included in the Sylvania Wilderness Area and will presume that the Forest Service's failure to complete the official map is simply evidence that the plaintiffs present to support their position that their claim is not time-barred, rather than the claim of actual injury for which they seek redress in this case.

Congress has enacted a general statute of limitations for suits against the government at 28 U.S.C. 2401(a), which provides:

[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

This court has held that a right "first accrues" when the plaintiff knows or has reason to know of the injury complained of. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991). The district court considered setting the time for "first accrual" in 1987, when the Michigan Wilderness Act was passed. In the MWA, Congress specifically set forth "eighteen thousand three hundred and twenty-seven acres" referenced on a map, as the "Sylvania Wilderness-Proposed." The map includes about 95% of Crooked Lake.

The plaintiffs contend that the cause of action contesting the inclusion of the lake within the wilderness did not accrue until the spring of 1998, when they learned that the Forest Service had not yet issued the official map of the Sylvania Wilderness, as required by the MWA.[3] The plaintiffs claim that they could not have been on notice that the lake was part of the wilderness because the official map, which would provide them with that information, had yet to be published. The plaintiffs fail to make any meaningful connection, however, between the Forest Service's failure to file a map, and the lake's inclusion in the Wilderness Area. The language of the MWA does not predicate existence of the Wilderness Area on the promulgation of a map. Rather, it imposes a duty to complete a map as soon as practicable. We echo the statement of the district court that the plaintiffs rely too heavily on the issuance of the map to establish the date of accrual.

Ultimately, the district court decided that the latest possible accrual date was April 20, 1992, when Amendment No. 1 to the LMRP was issued. We agree. This amendment was

---

[3]Section 4 of the MWA required that the Secretary of Agriculture shall file maps and legal descriptions of each Wilderness Area "as soon as practicable."

issued under the standard rule-making procedure, including public notice and a public comment period. Accordingly, the plaintiffs were on notice that the federal government claimed jurisdiction over the lake at the time the Forest Service issued Amendment No. 1. It is clear that the plaintiffs had actual notice of the government's intent to regulate the lake at this point in time because issuance of this amendment prompted the lawsuit in *Stupak-Thrall I*. We hold that because the instant complaint was not filed until May of 1998, it is barred by the six-year statute of limitations of Section 2401(a).

Even if the accrual date might somehow be tied to the issuance of the map, the plaintiffs' claims are still time-barred. As we have noted, the plaintiffs were clearly aware of the Forest Service's promulgation of Amendment No. 1, and of the Forest Service's intention to exercise dominion over the lake by promulgating that amendment. The plaintiffs were likewise on notice, through the MWA and the public notice and comment period, that a map was to be filed and that the Forest Service intended to include the lake in any officially issued version of the Wilderness Area map. The lengthy litigation history of this case and the plaintiffs' participation in that litigation demonstrate beyond cavil that the plaintiffs knew that their riparian rights to the use of the lake were impaired by the Forest Service when Amendment No. 1 to the LRMP was issued.[4]

We also agree with the district court that the government did not waive its right to raise the statute of limitations as an affirmative defense. The government did not file a responsive pleading to the amended complaint; rather, without objection from the plaintiffs, the government moved for summary judgment raising, among other defenses, the statute of limitations. As the district court held, and as the record

---

[4]The government raises the doctrine of claim preclusion as an additional basis for granting summary judgment. Although we note the government's arguments have merit, we, like the district court, express no opinion on the government's *res judicata* arguments in light of our holding that the claims are barred by the statute of limitations.

confirms, the plaintiffs were aware that the government intended to respond to the complaint by moving for summary judgment and to claim this affirmative defense. Notably, the plaintiffs never claimed they were prejudiced or unfairly surprised by the government's failure to file a responsive pleading containing the affirmative defense. Because the plaintiffs had a fair opportunity to respond to the government's statute of limitations argument, we find that the plaintiffs suffered no prejudice and, therefore, the government did not waive their defense. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) ("Failure to raise an affirmative defense by responsive pleading does not always result in waiver. The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond." (internal citation omitted)).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment to the defendants and dismissing this action.